IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| QUALITY OIL TOOLS LLC ; | § | Case No. 17-33807 |
| QOT HOLDING COMPANY, LLC, | § | |
| | § | |
| Debtors. | § | Joint Administration Pending |

**DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105(a), 363, 507(a), 541, 1107(a) AND 1108, AND FED. R. BANKR. P. 6003 AND 6004, TO, *INTER ALIA*, (I) AUTHORIZE, BUT NOT DIRECT, THE DEBTOR TO PAY PREPETITION WAGES, COMPENSATION AND EMPLOYEE BENEFITS; (II) AUTHORIZE, BUT NOT DIRECT, THE DEBTOR TO CONTINUE CERTAIN EMPLOYEE BENEFIT PROGRAMS IN THE ORDINARY COURSE; AND (III) DIRECT ALL BANKS TO HONOR PREPETITION CHECKS FOR PAYMENT OF <u>PREPETITION EMPLOYEE OBLIGATIONS</u>**

A HEARING WILL BE CONDUCTED ON THIS MATTER ON JUNE 20, 2017, at 3:00 P.M. CT IN COURTROOM 404, 4th FLOOR, 515 RUSK, HOUSTON, TEXAS 77002.

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED; YOU SHOULD FILE AN IMMEDIATE RESPONSE.

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE MARVIN ISGUR,
UNITED STATES BANKRUPTCY JUDGE:**

Quality Oil Tools LLC and QOT Holding Company LLC (collectively, the "Debtor"), hereby moves (this "Motion") this Court for entry of interim and final orders (the "Interim Order" and "Final Order," respectively), pursuant to sections 105(a), 363, 507(a)(4), 507(a)(5), 541, 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) authorizing, but not directing, the Debtor to (a) pay or otherwise honor various prepetition employee-related obligations, including, but not limited to, wages, salaries, reimbursable employee expenses and employee benefits, and (b) continue on a postpetition basis certain of the Debtor's employee benefit plans and programs in effect immediately prior to the filing of these bankruptcy cases; (ii) directing all banks to honor prepetition checks for payment of the Debtor's prepetition employee-related obligations; and (iii) granting related relief as further described herein. In support of this Motion, the Debtor, by and through its undersigned counsel, respectfully represent:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The legal predicates for the relief requested herein are sections 105(a), 363(b), 507(a)(4), 507(a)(5), 541, 1107(a) and 1108 of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004.

2

**BACKGROUND**

3. On the date hereof (the "Petition Date"), the Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

4. The Debtor continues to manage and operate its business as debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108. To date, no creditors' committee has been appointed in the Chapter 11 Case by the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee"). No trustee or examiner has been appointed in the Chapter 11 Case.

**RELIEF REQUESTED**

5. By this Motion, the Debtor requests entry of the Interim Order and the Final Order, pursuant to Bankruptcy Code sections 105(a), 363, 507(a)(4), 507(a)(5), 541, 1107(a) and 1108, and Bankruptcy Rules 6003 and 6004, authorizing, but not directing, the Debtor to (a) pending entry of a Final Order (i) pay and/or otherwise honor, as applicable, prepetition obligations to current employees (collectively, the "Employees"), including accrued prepetition wages, salaries, paid time off (including vacation and sick leave), and other cash and non-cash compensation claims, except as otherwise set forth herein, (ii) honor and continue in the ordinary course of business until further notice (but not assume), certain of the Debtor's paid time off and other employee benefit plans and programs (the most significant of which are described below) except as otherwise set forth herein, and to pay all fees and costs associated therewith, (iii) reimburse Employees for certain prepetition expenses incurred by such Employees on behalf of the Debtor in the ordinary course of business, and (iv) pay any current local, state and federal withholding and payroll-related taxes associated with the foregoing (collectively (i) – (iv), the "Prepetition Employee Obligations") and (b) pursuant to the Final Order, continue to honor and pay all other Prepetition Employee Obligations in the ordinary

3

course of business during the Chapter 11 Case. Following entry of the requested Interim Order and prior to the entry of the Final Order (the "Interim Period"), no Employee will receive payments in amounts in excess of the $12,850 priority cap set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code (the "Priority Cap").

6. To assist in implementing the relief requested, the Debtor also requests an order (i) authorizing and directing the Debtor's banks to receive, process, honor and pay all of the Debtor's prepetition checks and to fund transfers on account of any Prepetition Employee Obligations to the extent sufficient funds are available; (ii) authorizing, but not directing, the Debtor to issue new postpetition checks or effect new postpetition fund transfers on account of the Prepetition Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected; and (iii) authorizing, but not directing, the Debtor to continue its ordinary course employee compensation, benefits and related programs described in this Motion during the Debtor's restructuring process.

7. For the reasons set forth herein, the Debtor submits that the relief requested is in the best interest of the Debtor, the estate, creditors and other parties in interest, and therefore, should be granted.

**BASIS FOR RELIEF**

8. As of the Petition Date, the Debtor employs 20 Employees. Of these, seven (7) are salaried and thirteen (13) are hourly Employees. The Employees perform a variety of critical functions, including but not limited to accounting, administrative support, accounts payable, billing operations, human resources, information technology, legal, and operations. Retaining the Employees, whose skills and understanding of the Debtor's operations and infrastructure are essential to the effective operation of the Debtor's business, is critical to the Debtor's ability to maximize the value of the estate.

9. In Part A(I) of this Motion, the Debtor describes and seeks authority to pay Employees' prepetition and postpetition wages and salaries. In Part A(II) of this Motion, the Debtor describes its paid time off and expense reimbursement programs and request authority to continue each of these programs and pay prepetition and postpetition amounts thereunder. In Part B of this Motion, the Debtor describes and seeks authority to pay certain prepetition amounts under their healthcare, insurance and other employee benefit programs and continue those programs during the postpetition period. Part B(I) sets forth the Debtor's medical and insurance benefit plans and their obligations thereunder. Part B(II) addresses other benefit plans and programs that the Debtor provides for Employees. Finally, in Part C of this Motion, the Debtor asks this Court to direct banks to honor checks for the payment of the Prepetition Employee Obligations until further order of this Court.

### A.   (I) EMPLOYEE COMPENSATION: WAGES, SALARIES, COMMISSIONS AND RELATED PAYROLL TAXES

10. <u>Wages and Salaries</u>. In the ordinary course of business, the Debtor pays Employees on a bi-weekly basis, every other Friday, one week in arrears. For the month of May 2017, the Debtor's monthly payroll obligation was approximately $112,488.00, including payroll taxes and processing fees.

11. The Debtor uses third-party payroll administrators, Readychex and Taxpay (the "<u>Payroll Administrator</u>"). The majority of Employees receive direct deposit payments from the Debtor. The Debtor sends the Payroll Administrators the net payroll amount for certain Employees who receive paper checks, as well as the employee tax obligations one day before each payroll date. The Payroll Administrators initiate issue checks to Employees and remit payroll taxes to government agencies.

12. <u>Social Security, Income Taxes and Other Withholding</u>. In connection with paying wages and salaries, the Debtor and/or the Payroll Administrators are required to withhold from Employee payroll disbursements amounts that the Debtor is required to transmit to third parties. Examples of such withholding include, without limitation, FICA (Social Security and Medicare), federal, state and local income taxes, garnishments, health care payments and certain voluntary payroll deductions. Typically, total payroll taxes are approximately $32,772.54 per month, including both the Debtor's obligations and the Employees' obligations. Such withheld funds, to the extent that they remain in the Debtor's possession, constitute monies held in trust and, therefore, are not property of the Debtor's bankruptcy estates. The Debtor hereby requests authority, but not direction, to direct any trust funds to the appropriate parties when such amounts are due.

13. By this Motion, the Debtor seeks authority, but not direction, to pay and/or otherwise honor (during the Interim Period) in the ordinary course of business the amounts owed as of the Petition Date for accrued and unpaid wages and salaries up to the Priority Cap and any current amounts that the Debtor is required by law to withhold from Employee payroll disbursements in respect of federal, state and local income taxes, garnishment contributions, social security and Medicare taxes. The Debtor seeks authority, but not direction, to pay all such amounts pursuant to the Final Order.

**(II) Other Employee Compensation: Paid Time Off and Expense Reimbursement**

14. In addition to salaries and wages, the Debtor offers their Employees other forms of compensation, including paid time off and reimbursement of certain business expenses. These forms of compensation are usual and customary and necessary if the Debtor is to retain qualified Employees to maximize the value of the Debtor's business. Accordingly, the Debtor requests authority, but not direction, to honor outstanding prepetition obligations with respect to

6

6179845v2

the policies that provide for such other forms of compensation during and after the Interim Period in the ordinary course of business, and subject to the Debtor's discretion.

15. <u>Paid Time Off</u>. Specifically, the Debtor's Employees are eligible to receive paid time off (the "<u>Paid Time Off</u>"). Employees have varying amounts of paid time off (for vacation, sick leave, personal leave, and for company-recognized holidays). Employees are entitled to payment upon termination equal to accrued but unused paid time off.

16. By this Motion, the Debtor seeks authority, but not direction, to honor all prepetition obligations with respect to the Paid Time Off policies during and after the Interim Period in the ordinary course of business, and subject to the Debtor's discretion.

17. <u>Expense Reimbursement</u>. In the ordinary course of business, the Debtor routinely reimburses Employees or pay credit card invoices on behalf of Employees for certain reasonable expenses incurred within the scope of their employment (collectively, the "<u>Reimbursable Expenses</u>"). The Reimbursable Expenses are incurred by Employees with the understanding that they will be reimbursed by the Debtor.

18. Because Employees do not always submit claims for reimbursement promptly, there may be a lag time between the time expenses are incurred and the time expenses are reimbursed, so it is difficult for the Debtor to determine with precision the actual amount of incurred but not reported Reimbursable Expenses as of any particular time. The average aggregate monthly amount expended by the Debtor for Reimbursable Expenses is approximately $1,500.00.

19. It would be inequitable to require the Employees to personally bear the cost of any approved, business-related expenses incurred in furtherance of their responsibilities to the Debtor. The Debtor believes that no current Employees have outstanding Reimbursable

Expenses. However, out of an abundance of caution and to avoid harm to the Employees, the Debtor seeks authority, but not direction, to pay all outstanding prepetition Reimbursable Expenses.  In addition, in order to avoid harm to the Employees, the Debtor seeks authority, but not direction, to continue its expense reimbursement policy during and after the Interim Period in the ordinary course of business and subject to the Debtor's discretion and applicable restrictions under the Debtor's policies.

**B.     Authorizing, But Not Directing, Payment of Prepetition Employee Benefits and the Continuation of Employee Benefit Programs in the Ordinary Course of Business**

(I) Medical Benefit Plans

20.     In the ordinary course of business, the Debtor has established various standard and customary plans and policies to provide their Employees with (a) medical, dental and vision plans (the "Health Insurance Benefits").

21.     Health Insurance Benefits. The Debtor offers medical, dental and vision plans that are administered by United Healthcare. The Debtor pays an average of approximately $25,415.00 per month to United Healthcare for administering the plans.

22.     Due to a lag in the processing of claims, certain amounts may be accrued but not outstanding on account of the Health Insurance Benefits. Such amounts are difficult to estimate at this time. Each of these plans is important to the maintenance of Employee welfare and morale and is therefore critical to the uninterrupted operation of the Debtor's business. The Debtor therefore requests authority, but not direction, to pay benefits and administrative costs under the Health Insurance Benefits plans, and to continue their practices related to these plans during and after the Interim Period in the ordinary course of business.

6179845v2

(II) Other Benefit Plans and Programs

23. <u>Savings Plan</u>. The Debtor also maintain a SIMPLE IRA savings plan for its Employees (the "<u>Savings Plan</u>") administered by Oppenheimer & Co. Inc. Under the Savings Plan, eligible Employees may elect to contribute up to the annual IRS dollar limit (which varies annually) to the Savings Plan, and the Debtor matches a portion of each Employee's contribution up to a maximum of 3% of each Employee's gross earnings per year. For the year ended December 31, 2016, the Debtor's contribution to the Savings Plan amounted to approximately $44,844.00. The Debtor believes that $3,737.00 will be outstanding on account of Employee contributions or matching contributions as of the Petition Date.

24. The Debtor believes that performing its obligations under the Savings Plan, including providing the prepetition matching contributions, is essential to maintaining Employee morale. Accordingly, the Debtor requests authority, but not direction, to continue the Savings Plan and to pay any outstanding accrued obligations related to the Savings Plan during and after the Interim Period in the ordinary course of business.

**C.    Direction to Banks**

25. Finally, the Debtor seeks an order authorizing and directing the financial institutions upon which any checks, drafts, electronic funds transfers, or wire transfers are drawn in payment of the Prepetition Employee Obligations – either before, on, or after the Petition Date – to honor all such checks or drafts issued, upon presentation thereof, or all such wire transfer instructions, upon receipt thereof, provided that sufficient funds are immediately available and on deposit in the applicable accounts. The Debtor also seeks an order authorizing them to issue new postpetition checks or effect new postpetition fund transfers on account of the Prepetition Employee Obligations to replace any prepetition checks or fund transfer requests that may be

dishonored or rejected. The Debtor also requests that any party receiving payment from the Debtor be authorized and directed to rely upon the representations of the Debtor as to which payments are authorized by the requested relief.

26. Continued payment, when due, of prepetition wages and salaries, and the continuation, without interruption, of compensation and benefit plans, policies, programs and practices underlying the Prepetition Employee Obligations and described herein is necessary to ensure the ongoing services of the Debtor's Employees during the Chapter 11 Case.

## APPLICABLE AUTHORITY

27. As a result of the commencement of the Chapter 11 Case and in the absence of an order of the Court providing otherwise, the Debtor will be prohibited from paying or otherwise satisfying its Prepetition Employee Obligations, and the checks, wire transfers, and direct deposit transfers issued in respect of the Prepetition Employee Obligations will be dishonored. Failing to honor these obligations would have devastating consequences on the Debtor's restructuring efforts and ability to maximize the value of the estate.

28. Under section 363 of the Bankruptcy Code, a bankruptcy court is empowered to authorize a chapter 11 debtor to expend funds in the bankruptcy court's discretion outside the ordinary course of business. 11 U.S.C. § 363. In order to obtain approval for the use of estate assets outside the ordinary course of business, the debtor must articulate a valid business justification for the requested use. See In re ASARCO, LLC, 650 F.3d 593, 601 (5th Cir. 2011) (quoting Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 780 F.2d 223, 1226 (5th Cir. 1986)); see also In re Terrace Gardens Park P'ship, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989). Payment of prepetition wage and salary claims to preserve and protect a debtor's business and maximize value of its estate and maintain positive

10

employee morale, even if such payment were deemed to be outside the ordinary course of business, is a sufficient business justification for such an authorization. Accordingly, this Court should grant the requested relief under section 363 of the Bankruptcy Code.

29. The Debtor believes that all of the amounts it seeks to pay, pursuant to the Interim Order, during the Interim Period are entitled to priority under sections 507(a)(4) and (a)(5) of the Bankruptcy Code. Section 507(a)(4) of the Bankruptcy Code grants priority to employee claims for "wages, salaries, or commissions, including vacation, severance and sick leave pay" earned within 180 days before the filing of the applicable petition up to $12,850 per employee. 11 U.S.C. § 507(a)(4). Similarly, section 507(a)(5) of the Bankruptcy Code provides that claims for contributions to certain employee benefit plans are also afforded priority treatment to the extent of the number of employees covered by each plan multiplied by $12,850, less any amounts paid pursuant to section 507(a)(4) of the Bankruptcy Code. 11 U.S.C. § 507(a)(5). Thus, granting the relief sought herein would affect only the timing, and not the amount, of payment of the Prepetition Employee Obligations to the extent they constitute priority claims.

30. Even if a particular claim is not entitled to priority, payment is nonetheless justified under section 105(a) of the Bankruptcy Code and the well-established "necessity of payment doctrine." Under the "necessity of payment doctrine" and section 105(a) of the Bankruptcy Code, courts have consistently permitted immediate payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors, specifically including payment of prepetition employee claims. See, e.g., Miltenberger v. Logansport C. & S.W. Ry. Co., 106 U.S. 286, 312 (1882) (stating that payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial]

11

business relations"); see also Gregg v. Metro Trust Co., 197 U.S. 183, 187 (1905) (stating that "the payment of the employees of the [rail]road is more certain to be necessary in order to keep it running than the payment of any other class of previously incurred debts"); In re Ionosphere Clubs, Inc., 98 B.R. at 175-76 (finding that payment of prepetition wages, salaries, reimbursable business expenses and health benefits to active employees of debtor airline authorized). "The Supreme Court … [recognizes] the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11." In re Just for Feet, Inc., 242 B.R. 821, 825 (Bankr. D. Del. 1999).

31.     The "necessity of payment" doctrine was recognized in In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. Id. (stating a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); see also In re CEI Roofing, Inc., 315 B.R. 50, 58 (Bankr. N.D. Tex. 2004); In re CoServ, LLC, 273 B.R. 487, 493 (Bankr. N.D. Tex. 2002); In re Equalnet Communications Corp., 258 B.R. 368 (Bankr. S.D. Tex. 2000).

32.     The Debtor's ability to maximize value depends, in large part, upon the motivation of the Employees. The Debtor's Employees (and their families) are dependent upon the wages, salaries, reimbursements and other benefits they receive from the Debtor. Any disruption from Employee resignations or lack of morale could have devastating effects on the Debtor's restructuring efforts. Moreover, payments which are critical to the morale of the Debtor's workforce actually add value to the estate because an unplanned reduction in the workforce or productivity could have a detrimental effect on the Debtor's business operations.

Accordingly, it is critical that the Debtor be authorized to honor its Prepetition Employee Obligations during and after the Interim Period, subject to the limitations described herein.

33. Moreover, a portion of the Prepetition Employee Obligations constitutes funds held in trust for payment to third parties. Specifically, under Bankruptcy Code section 541, all prepetition legal or equitable interests of a debtor are considered property of the estate subject to certain exclusions. Bankruptcy Code section 541(b)(7) explicitly excludes amounts withheld by an employer from employee wages as employee contributions to employee benefit plans under ERISA and health insurance plans under state law. Thus, the payment of the employee contribution component of the employer taxes or payment of garnished wages will not prejudice the Debtor's estate because such withholdings are held in trust for the benefit of the related payees and, thus, do not constitute property of the Debtor's estate under section 541 of the Bankruptcy Code. See Begier v. IRS, 496 U.S. 53, 57 (1990); In re Am. Int'l Airways, Inc., 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (funds held in trust for federal excise and withholding taxes are not property of debtor's estate and, therefore, not available for distribution to creditors).

34. Finally, the Debtor, operating its business as debtor in possession under Bankruptcy Code sections 1107(a) and 1108, is a fiduciary "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." Id.

35. Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." Id. The CoServ court specifically noted that preplan satisfaction of prepetition claims would be a valid

6179845v2

exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." Id. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

Id. at 498.

36. Payment of the Prepetition Employee Obligations meets each element of the CoServ court's standard. First, it is critical that the Debtor honor its Prepetition Employee Obligations because the Employees may maintain priority claims against the Debtor for the Prepetition Employee Obligations. In addition, the efforts of Employees are necessary to the Debtor's efforts to maximize the value of the estate. Any failure by the Debtor to pay the Prepetition Employee Obligations would negatively impact the morale of the Debtor's Employees at a critical time for the Debtor and the business. Second, the potential harm and economic disadvantage that would result from the failure to pay the Prepetition Employee Obligations outweighs the actual amount of any prepetition claims that may be paid. The amount owed to the Debtor's hard-working Employees is small in comparison to the value that they add and will continue to add through their efforts to preserve and grow the Debtor's business. Finally, there is no practical or legal alternative to payment that would not cause a significant disruption of the Debtor's business operations.

37. Courts in this district have routinely granted the same or similar relief as requested in this Motion to chapter 11 debtors. See, e.g., In re Autoseis, Inc., Case No. 14-20130,

14

Dkt. No. 244 (Bankr. S.D. Tex. Apr. 25, 2014); In re ATP Oil & Gas Corp., Case No. 12-36187, Dkt. No. 136 (Bankr. S.D. Tex. Aug. 21, 2012); In re Seahawk Drilling, LLC, Case No. 11-20089, Dkt. No. 47 (Bankr. S.D. Tex. Feb. 14, 2011); In re Spectrum Jungle Labs Corp., et al., Case No. 09-50455, Dkt. No. 48, (Bankr. W.D. Tex. Feb. 5, 2009); In re Pilgrim's Pride Corp., et al, Case No. 08-45644, Dkt. No. 65 (Bankr. N.D. Tex. Feb. 5, 2009); In re Scotia Dev. LLC, Case No. 07-20027, Dkt. No. 73 (Bankr. S.D. Tex. Jan. 24, 2007); see also In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (stating that relief regarding payment of prepetition wage claims was appropriate to "preserve and protect [the debtor's] . . . business and ultimately reorganize, retain its currently working employees and maintain positive employee morale").

38. For all the reasons previously set forth herein, the Debtor submits that payment of the Prepetition Employee Obligations and the continuation of the specified related employment policies and programs are necessary to the success of the Debtor's orderly restructuring and should be authorized by this Court.

39. As a precaution, the proposed Interim and Final Orders provide that the relief granted therein shall not constitute or be deemed an assumption of any of the employment and service agreements to which the Debtor is a party or any of the Debtor's Employee benefit policies, plans, programs, practices and procedures under section 365 of the Bankruptcy Code.[1]

**IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM**

40. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R.

---

[1] Nothing contained in this Motion is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's right to dispute any claim, applicability of any law, or an approval or assumption of any agreement, contract or lease under Bankruptcy Code section 365.

6179845v2

Bankr. P. 6003; see also In re First NLC Fin. Servs., LLC, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008) (holding that Bankruptcy Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm). The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that context, the court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh, 235 F. App'x 907, 910 (3d Cir. 2007) (citing Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977)). Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. See, e.g., Acierno v. New Castle Cnty., 40 F.3d 645, 653-55 (3d Cir. 1994). The Debtor submits that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor.

### WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

41. The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate its business without interruption and to preserve value for the estate. Accordingly, the Debtor respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

### NOTICE

42. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the proposed DIP Lender; (c) the

6179845v2

Plexus Parties; (d) the parties listed in the twenty (20) largest unsecured creditors filed by the Debtors in these Chapter 11 Cases; and (e) any such other party entitled to notice pursuant to the Local Rules.  The Debtors submit that no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter the Interim Order and the Final Order, substantially in the forms annexed hereto, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: Houston, Texas
       June 19, 2017

**Porter Hedges LLP**

By:   /s/ Joshua W. Wolfshohl
      Joshua W. Wolfshohl
      State Bar No. 24038592
      Aaron J. Power
      State Bar No. 24058058
      1000 Main Street, 36th Floor
      Houston, TX  77002
      (713) 226-6695
      (713) 226-6295 (fax)

**Proposed Counsel for Debtors and Debtors in Possession**